**Eugene QUAGLIA and the Pennsylvania Social Services Union, Local 688 of the Service Employees International Union, Petitioners**

v.

**STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2009.

Decided Jan. 5, 2010.

Bruce M. Ludwig, Philadelphia, for petitioners.

Robin M. Hittie, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, McCLOSKEY, Senior Judge,[1] and QUIGLEY, Senior Judge.

---

1. The decision in this case was decided before Senior Judge McCloskey retired on December 31, 2009.

OPINION BY President Judge LEADBETTER.

 The Pennsylvania Social Services Union, Local 688 of the Service Employees International Union (Union), and Eugene Quaglia (collectively, Petitioners) petition for review of the opinion issued by the State Ethics Commission (Commission) affirming the advice of the Commission's chief counsel.[2] The Commission determined that individuals employed by the Department of Public Welfare (DPW) as income maintenance caseworkers (caseworkers) are subject to the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1101–1113, and the regulations thereunder, requiring "public employees" to, *inter alia,* file financial interest statements. Petitioners argue that the Commission misconstrued the definition of "public employee" in the Ethics Act and the regulations and that the Commission's interpretation is inconsistent with the previous advice of the former chief counsel and the provisions of the former regulations.

In a letter dated September 22, 2008, James A. Honchar, the Deputy Secretary for Human Resources and Management at the Governor's Office of Administration, requested the Commission's opinion as to whether DPW's caseworkers are required to file financial interest statements pursuant to the Ethics Act.[3] Section 1104(a) of the Ethics Act, 65 Pa.C.S. § 1104(a), provides in relevant part:

> Each *public employee* and public official of the Commonwealth shall file a statement of financial interests for the preceding calendar year with the department, agency, body or bureau in which he is employed or to which he is appointed or elected no later than May 1 of each year that he holds such a position and of the year after he leaves such a position. [Emphasis added.]

Section 1102 of the Ethics Act, *as amended,* 65 Pa.C.S. § 1102, defines a "public employee" as:

> Any individual employed by the Commonwealth or a political subdivision who is responsible for *taking or recommending official action of a nonministerial nature* with regard to:
>
> (1) contracting or procurement;
>
> (2) *administering or monitoring grants or subsidies;*
>
> (3) planning or zoning;
>
> (4) inspecting, licensing, regulating or auditing any person; or
>
> (5) *any other activity where the official action has an economic impact of greater than a de minimis nature on the interests of any person.* [Emphasis added.]

A "nonministerial action" is "[a]n action in which the person *exercises his own judg-*

---

**2.** We note that the parties have not raised the issue of whether advisory opinions of the Commission are non-justiciable, non-appealable orders. Therefore, we will not address the issue. *See, e.g., Rendell v. Pa. State Ethics Comm'n,* —— Pa. ——, 983 A.2d 708 (2009).

**3.** The original Ethics Act, Act of October 4, 1978, P.L. 883, 65 P.S. §§ 401–413, was reenacted in 1989. The 1989 act was then repealed and replaced by the current act enacted in 1998. A financial interest statement must be filed on a form prescribed by the Commission. Section 1105(a) of the Ethics Act, 65 Pa.C.S. § 1105(a). Any person who fails to file a financial interest statement commits a misdemeanor and, upon conviction, is sentenced to pay a fine up to $1000 or to serve imprisonment for up to one year, or both. Section 1109(b) of the Ethics Act, 65 Pa.C.S. § 1109(b). In addition, the Commission may assess a civil penalty of not more than $25 a day, up to a total of $250, for the time that the statement remains delinquent. Section 1109(f) of the Ethics Act; 51 Pa.Code § 19.3(e).

*ment as to the desirability of the action taken." Id.* (emphasis added).

In requesting the Commission's opinion, Honchar noted that in 2005, the Commission determined in *In re Makar* that a caseworker was a public employee required to file financial interest statements. Honchar also noted that in the 1979 advice of counsel issued in *In re Preloh,* the Commission's former chief counsel reached a conflicting conclusion that the caseworker was not a public employee. Honchar stated:

> Historically, the Governor's Office of Administration has not required Income Maintenance Caseworkers to file Financial Disclosure statements. There are currently 4,530 Income Maintenance Caseworkers that could be impacted by this decision. This would increase the work required by the Department of Public Welfare in the coordination of employee filings to almost three times the amount required to date. Additionally, there may be other job titles with similar duties as the Income Maintenance Caseworker that would have to be reviewed to re-evaluate the need for those individuals to file Financial Disclosure statements.

Honchar's September 22, 2008 Letter; Reproduced Record (R.R.) at 1a. Honchar enclosed the current job specifications for the caseworker position (Job Code 44720), dated June 1, 1989, which stated that the caseworkers perform "professional work assessing clients' social services and employment needs, determining client eligibility for Income Maintenance Program services and making appropriate referrals for services." R.R. at 3a.

In an advice of counsel issued in response, the Commission's chief counsel, Robin M. Hittie, Esquire, determined that caseworkers meet the definition of "public employees" under the Ethics Act and, therefore, must file financial interest statements. The chief counsel cited the Commission's 1997 adjudication rendered in *In re Metrick,* concluding that caseworkers were public employees under the Ethics Act. The chief counsel stated that the *Metrick* decision superseded the earlier *Preloh* advice of the former chief counsel issued in 1979. The Union and Quaglia, who is a DPW's caseworker in the Berks County Assistance Office and also a Union member, appealed the advice of counsel to the Commission.[4]

On appeal, the Commission held a public meeting and conducted a *de novo* review of Honchar's request for an opinion. Quaglia testified that the caseworkers generally work in the office and sometimes in the field without supervisors' presence and

---

4. The Commission has the powers and duties to provide, upon request, an opinion or a written advice with respect to a person's duties under the Ethics Act. Section 1107(10) and (11) of the Ethics Act, 65 Pa.C.S. § 1107(10) and (11). The Commission's chief counsel issues an advice on behalf of the Commission within 21 working days after receipt of the request. 51 Pa.Code § 13.2(b). The chief counsel's advice may be appealed to the Commission within 30 days of the issuance of the advice. 51 Pa.Code § 13.2(g) and (h). On appeal, the Commission issues an opinion "either affirming, modifying or reversing the original advice." 51 Pa.Code § 13.2(i). The advice of counsel constitutes a complete defense in an enforcement proceeding initiated by the Commission against a requester and evidence of the requester's good-faith conduct in another civil or criminal proceeding, if the requester disclosed truthfully the material facts and committed the acts complained of either in reliance on the advice or due to the failure of the Commission to provide advice within 21 days. Section 1107(11) of the Ethics Act; 51 Pa. Code § 13.2(k). Similarly, one who acts in good faith on the Commission's opinion is not subject to criminal or civil penalties for so acting, if "the material facts are so stated in the opinion request." Section 1107(10) of the Ethics Act; 51 Pa.Code § 13.3(e).

must follow DPW's policies and procedures to determine clients' eligibility for grants and subsidies and that their work is subject to supervisors' review. Quaglia further testified that the caseworkers are encouraged to be as liberal as possible in assessing the need for verification of information provided by the clients. According to Quaglia, the eligibility determination is made on the computer, but the caseworkers can override the information in the computer, in which event the supervisors are notified. Petitioners also presented numerous exhibits to support their appeal.

The Commission rejected Petitioners' contention that it should be guided by the inaction of the Governor's Office of Administration to require caseworkers to file financial interest statements and by the former regulations promulgated in 1980, which listed "welfare case worker" as an example of a nonpublic employee position. *See* former 51 Pa. Code § 1.1.[5] The Commission agreed that its 1997 *Metrick* ruling superseded the 1979 *Preloh* advice of counsel. The Commission concluded that caseworkers are public employees under the Ethics Act because they are responsible for taking or recommending official action

of a nonministerial nature in administering or monitoring grants and subsidies and in engaging in other activities with an economic impact on others' interests. The Commission rejected Petitioners' argument that the caseworkers do not exercise their own judgment as to the *desirability* of their action under the definition of "nonministerial action." The Commission stated that the fact that the caseworkers act in accordance with DPW's manuals and applicable law does not render their actions " 'ministerial,' any more than a court may be characterized as taking ministerial action when it applies laws and precedents." Commission's Opinion at 11. The Commission accordingly denied Petitioners' appeal and affirmed the advice of counsel. Petitioners' appeal to this Court followed.[6]

Petitioners concede that caseworkers take "official action" in administering or monitoring grants and subsidies and that their action has a great economic impact on others. Petitioners also acknowledge that the caseworkers are classified as "professional" and must exercise "judgment" in making eligibility determinations. Petitioners' Brief at 19. Petitioners argue, however, that the casework-

**5.** The title of "welfare case worker" was changed to "income maintenance worker 2" and then to the current title of "income maintenance caseworker" in 1985. R.R. at 127a. The current regulations do not list the caseworker position as an example of either a public employee position or a non-public employee position.

**6.** The Union, Quaglia and another caseworker filed a class-action grievance with DPW and also filed an original jurisdiction action against the Commonwealth, Governor, Secretary of Administration and Secretary of Public Welfare on behalf of similarly situated employees, seeking to enjoin the respondents from requiring the caseworkers to file financial interest statements. *Pa. Soc. Servs. Union, Local 688 of the Service Employees Int'l Union v. Commonwealth*, (Pa.Cmwlth., No. 215 M.D.2009). The petitioners alleged that

after the chief counsel issued the advice of counsel in November 2008, the Governor's Office of Administration informed the caseworkers that they must file financial interest statements by May 1, 2009. The parties subsequently entered into a Stipulation and Agreement, in which the respondents agreed not to require the caseworkers and their supervisors to file financial interest statements and not to discipline them for failing to file the statements, pending the outcome of the instant appeal and the original jurisdiction action. In return, the petitioners agreed to withdraw their motion for stay filed with the Commission and application for stay filed in this proceeding without prejudice. By order dated April 24, 2009, this Court approved the Stipulation and Agreement, and Petitioners' application for stay was deemed withdrawn.

ers do not meet the definition of "public employee" because they perform "ministerial action," which is defined as "[a]n action that a person performs in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of the person's own judgment as to the desirability of the action being taken." Section 1102 of the Ethics Act. Petitioners claim that unlike employees in the positions listed in the regulations as examples of public employee positions, the caseworkers are "line workers" and must determine eligibility for grants and services in accordance with the standards set forth in the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1503, the regulations and DPW's handbooks. Petitioners' Brief at 23.[7]

■ The Legislature has declared "that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust." Section 1101.1(a) of the Ethics Act, 65 Pa.C.S. § 1101.1(a). To promote the declared legislative purpose, the Ethics Act requires public officials and public employees to file financial interest statements and prohibits them from engaging in certain restricted activities enumerated in Section 1103, 65 Pa.C.S. § 1103, such as engaging in activities implicating a conflict of interest, soliciting or accepting anything of monetary value, accepting an honorarium, soliciting contingent and severance payments and entering into a contract valued at more than $500 with a governmental body. The Ethics Act is remedial legislation with the salutary purpose of assuring the integrity and honesty of the Commonwealth employees and, as such, must be "liberally construed." Section 1101.1(a) of the Ethics Act; *Maunus v. State Ethics Comm'n,* 518 Pa. 592, 600, 544 A.2d 1324, 1328 (1988). Consequently, the coverage of the Ethics Act must be construed broadly, and its exclusions must be construed narrowly. *Phillips v. State Ethics Comm'n,* 79 Pa.Cmwlth. 491, 470 A.2d 659 (1984).

■ As an agency responsible for enforcing and implementing the Ethics Act, the Commission is "in the best position to interpret" the Ethics Act and its regulations. *Tire Jockey Serv., Inc. v. Dep't of Envtl. Prot.,* 591 Pa. 73, 110, 915 A.2d 1165, 1187 (2007). Accordingly, the Commission's interpretation is accorded deference and "given controlling weight unless it is clearly erroneous." *Riverwalk Casino, L.P. v. Pa. Gaming Control Bd.,* 592 Pa. 505, 530, 926 A.2d 926, 940 (2007).

The following criteria are used, in part, to determine whether an individual is a public employee under the Ethics Act:

(A) The individual normally performs his responsibility in the field without onsite supervision.

(B) The individual is the immediate supervisor of a person who normally performs his responsibility in the field without onsite supervision.

(C) The individual is the supervisor of a highest level field office.

(D) *The individual has the authority to make final decisions.*

(E) *The individual has the authority to forward or stop recommendations from being sent to the person or body with the authority to make final decisions.*

---

7. This Court's review is limited to determining whether the Commission's necessary factual findings are supported by substantial evidence or whether the Commission committed an error of law. *Keller v. State Ethics Comm'n,* 860 A.2d 659 (Pa.Cmwlth.2004).

(F) *The individual prepares or supervises the preparation of final recommendations.*

(G) The individual makes final technical recommendations.

(H) *The individual's recommendations or actions are an inherent and recurring part of his position.*

(I) *The individual's recommendations or actions affect organizations other than his own organization.*

51 Pa.Code § 11.1 (emphasis added).[8]

■ In *Phillips*, this Court approved the "objective test" utilized by the Commission to determine whether an employee falls within the definition of public employee. Under the objective test, an employee's duties and responsibilities as set forth in job specifications or job description, rather than actual duties and responsibilities performed by the employee, determine whether the employee is a public employee. The job specifications submitted to the Commission set forth the following duties and responsibilities of the caseworkers:

Eligibility determination work involves interviewing clients in the office and in the field and investigating resources to secure, evaluate and interpret data essential to making a decision on eligibility. Employees assess clients' social service and employment needs, and provide clients or their families with information on community resources for social and employment services. *Work is distinguished from that of the next lower level by the level of supervision. Supervision involves selective review of cases assigned to the worker. Responsibility for determination or redetermination action rests with the worker. ... Work is performed in accordance with established policies and procedures under the general supervision of an Income Maintenance Casework Supervisor or other administrative supervisor.*

R.R. at 3a (emphasis added). The caseworkers must be able "to learn the policies, rules and regulations pertaining to income maintenance programs." *Id.* at 4. In addition, they must have an ability "to exercise sound judgment in differing circumstances and to act in a responsible and professional manner in stressful or unpleasant situations." *Id.*[9]

8. The following individuals are generally considered to be public employees: executive and special directors or assistants reporting directly to the agency head or governing body, bureau directors, staff attorneys, engineers, managers, police chiefs, chief clerks, chief purchasing agents, grant and contract managers, zoning officers, court administrators, school superintendents, principals and persons directly reporting to the heads of agencies. 51 Pa.Code § 11.1. Generally, city clerks, clerical staff, secretaries, police officers, probation officers, teachers and law clerks are not considered to be public employees. *Id.*

9. The job specifications also set forth examples of the caseworkers' work, which include:

Interviews applicants to determine eligibility for financial assistance and related income maintenance programs, such as ... Cash Assistance, Medical Assistance, Food Stamps, Nursing Home Care, and Employment Referrals.

Determines eligibility for various categories of assistance based on such factors as income, personal property, real property, legally responsible relatives and employment status.

Evaluates special needs of clients; authorizes grants which conform to agency requirements, or makes referrals to other community resources.

Redetermines eligibility through periodic review of client situations.

Obtains medical, employment, educational, vocational and financial resource data ... from other agencies as necessary to determine eligibility; records relevant case information on case records.

Conducts home visits to clients who are unable to travel to the County.

Contrary to Petitioners' argument, the caseworkers' duties and responsibilities in the job specifications support the Commission's conclusion that the caseworkers take or recommend "nonministerial" action and, thus, meet the definition of "public employee." The caseworkers interview clients in the office and in the field to obtain their financial information, and they investigate the clients' financial resources. They perform their duties under general supervision and without supervision when they work in the field. They prepare final recommendations on client's eligibility, and their work is only subject to selective review by the supervisors. Ultimately, "[r]esponsibilities for determination or redetermination action rests with the worker." R.R. at 3a. In addition, they refer any overpayment of benefits to the appropriate agency and "impose[ ] sanctions as necessary." *Id.* at 4a. These duties and responsibilities demonstrate that they exercise at least some degree of discretion and make their own judgment in performing their work. Quaglia conceded that the caseworkers "do exercise some judgment with regard to … areas in applying these

> Determines occurrence and circumstances of overpayments and refers information to the Office of Fraud and Abuse Investigation and Restitution for resolution.
> Provides clients or members of their family with information regarding services available from other social agencies, hospitals, clinics, courts and community resources as needed.
> Assists clients in utilizing these resources by making referrals to an appropriate agency; does follow-up as needed.
> Assists clients in locating employment through the Pennsylvania Employables Programs; develop[s] job listing of prospective employers; and monitors clients in Community Work Experience Program; and imposes sanctions as necessary.
> Represents one or more clients in the process of obtaining SSI benefits.
> R.R. at 3a–4a.

regulations…." Notes of Testimony (N.T.) at 20; R.R. at 152a. In addition, the caseworkers' actions or recommendations are "an inherent and recurring part" of their work. 51 Pa.Code § 11.1. The caseworkers' actions also have a great economic impact on the clients, their families and the agencies providing services on referrals.[10]

Petitioners argue, however, that the caseworkers' actions are not "nonministerial" because they do not exercise their own judgment as to the "desirability" of the action taken. According to Petitioners, the term "desirability" suggests exercising "discretion of a subjective or personal nature." Petitioners' Brief at 26. In support, Petitioners resort to Merriam–Webster Online Dictionary (2009), defining "desirable" as, *inter alia,* "worth seeking or doing as advantageous, beneficial, or wise." Petitioners maintain that the caseworkers must act without regard to their own judgment as to the desirability of applying the eligibility standards under the Public Welfare Code and the DPW's policies and regulations.

10. Petitioners do not challenge the applicability of the objective test, but they assert Quaglia's testimony and their exhibits established that the caseworkers do not impose sanctions and do not perform nonministerial actions. Petitioners claim that their evidence showed that the caseworkers act in a prescribed manner in obedience to the mandate of legal authority. Petitioners complain that the Commission read Quaglia's testimony "in an incomplete and twisted way" and that its decision is not supported by substantial evidence. Petitioners' Brief at 31. Under the objective test, however, only the duties and responsibilities of the position as set forth in the job specifications, not the testimony as to the actual duties and responsibilities performed by the employee, are relevant. The job specifications reviewed by the Commission support its determination that the caseworkers meet the definition of "public employee."

The Ethics Act does not define the term "desirability" in the definitions of "nonministerial" and "ministerial" actions. It is well settled that an undefined term must be construed in accordance with its common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa.Cmwlth.2006). Webster's Third New International Dictionary 612 (2002) defines the term "desirable" to include "advisable." The definition of "advisable" includes "proper to be advised or to be done" or "ready to receive advice." *Id.* at 32. The definition of "advisable" in Merriam–Webster Online Dictionary (2009) includes "fit to be advised or done: PRUDENT." The term "fit" is defined as "acceptable from a particular viewpoint" or "proper." *Id.* When the common and approved usage of the term "desirable" is liberally construed to allow broad coverage of the Ethics Act, the caseworkers' actions or recommendations are "nonministerial." They exercise their own judgment as to the advisability, acceptability or propriety of actions taken regarding the clients' eligibility for grants, subsidies and services and any sanctions to be imposed.[11]

Petitioners also attempt to distinguish the caseworkers' duties and responsibilities from those of the DPW's claim settlement agent involved in *Phillips*. Petitioners assert that the claim settlement agents have "a great deal of discretion as compared to" the caseworkers. Petitioners' Brief at 20. The claim settlement agents' duties included investigating clients' financial resources, analyzing information, taking steps to obtain restitution, negotiating a sale or rental of property and recommending compromise settlements. In *Phillips*, the claim settlement agent argued that police officers, detectives and welfare caseworkers, who were generally considered non-public employees under the regulations then in effect, exercised more discretion than the claim settlement agents. The Court rejected the argument and affirmed the Commission's determination that the claim settlement agent was a public employee, "[i]n light of the liberal, expansive interpretation to be given the Act's coverage provisions." *Phillips*, 470 A.2d at 661. The Court also noted that the claim settlement agents normally did not perform work in accordance with prescribed procedures and were required to exercise discretion and judgment. Petitioners' reliance on *Phillips* is misplaced. The relevant inquiry in this case is not whether an employee in a different position exercises more discretion than the caseworkers, but whether the caseworkers' duties and responsibilities establish their status as public employees under the Ethics Act.

---

**11.** Petitioners cite *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981), in which the Pennsylvania Supreme Court concluded that a private practitioner retained by the township as a solicitor served in an advisory capacity and was neither a public employee nor a public official subject to the Ethics Act's disclosure requirement. *See also C.P.C. v. State Ethics Comm'n*, 698 A.2d 155 (Pa.Cmwlth.1997) (the borough solicitor appointed by the borough council was not a public employee under the Ethics Act). In *Maunus*, the Supreme Court limited the *Ballou* holding and held that attorneys employed in the *public* sector, such as attorneys employed by the Pennsylvania Liquor Control Board, are not exempt from complying with the Ethics Act's disclosure requirement. The Court reasoned that although the Supreme Court is the only governmental body entitled to regulate and discipline attorneys, "it is ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees." *Maunus*, 518 at 597, 544 A.2d at 1326. Petitioners' reliance on *Ballou* and *C.P.C.* is inapposite.

Relying on the fact that the definition of public employee has not changed since the enactment of the original Ethics Act in 1978, Petitioners submit that the Commission disregarded guidance provided by the former regulations enacted in 1980, listing "welfare case workers" as non-public employees. Petitioners also rely on the 1979 *Preloh* advice, concluding that the income maintenance worker was not a public employee.

Section 1107(a) of the Ethics Act, 65 Pa.C.S. § 1107(a), grants the Commission powers and duties to "[p]rescribe and publish rules and regulations to carry out the provisions of [the Ethics Act]." When the 1979 *Preloh* advice of counsel was issued, the Commission had not promulgated regulations. In concluding in *Preloh* that the income maintenance worker was not a public employee, the former chief counsel stated: "The issue of whether an income maintenance worker is a public employee is a matter to be resolved by regulation. If the Commission decides by regulation that an income maintenance worker are [sic] public employees, this Advice of Chief Counsel must be revised." Appendix B to the Commission's Brief. Petitioners fail to cite any authority for the proposition that the Commission may not amend its regulations to revise the examples of positions generally deemed to be public or non-public employee positions. Moreover, the Commission is not bound by the advice of counsel and may modify or reverse it on appeal. 51 Pa.Code § 13.2(i).

The Commission's opinion in this case is consistent with its prior adjudications. The Commission's final adjudication rendered in *Metrick* in 1997 involved the caseworker who worked as an independent agent for an insurance company while employed by DPW. He used his authority as a caseworker, DPW's equipment and the confidential information obtained during the interview of the applicants, to sell the applicants life insurance and to recruit them as insurance agents, for which he was paid commissions. After reviewing the job specifications, the Commission determined that the caseworker was a public employee and violated Sections 1103(a) and 1104(a) of the Ethics Act by engaging in activities constituting a conflict of interest and in failing to file financial interest statements. In the more recent adjudication rendered in *Makar* in 2005, the former caseworker was hired as a paralegal by the North Penn Legal Services, which was funded in part by DPW. The Commission imposed a penalty of $250 upon him, determining that he was a public employee and violated Section 1104(a) of the Ethics by failing to file financial interest statements.[12] An agency cannot be found to have abused its discretion by relying on its own established precedent. *Pa. State Park Officers Ass'n v. Pa. Labor Relations Bd.*, 854 A.2d 674 (Pa.Cmwlth.2004).[13]

While we do not suggest in any way that Petitioners herein have engaged in any such impropriety, the facts in *Metrick* and *Makar* amply demonstrate the need for bringing the caseworkers under the Ethics Act's coverage. The Commission eloquently stated in *Metrick*:

> [W]e must state how appalled we are at Metrick's actions in this case. Metrick's

**12.** Although the Commission decided *Makar* based on the consent agreement and stipulation of findings submitted by the parties, it did consider the caseworkers' job description.

**13.** We are not bound by an administrative agency's prior decisions, but we may rely on them when they are persuasive. *Thompson v. Workers' Comp. Appeal Bd. (Sacred Heart Med. Ctr.)*, 720 A.2d 1074 (Pa.Cmwlth.1998); *Gateway Sch. Dist. v. Pa. Labor Relations Bd.*, 79 Pa.Cmwlth. 506, 470 A.2d 185 (1984).

conduct was nothing more than a use of his position to take advantage of other people's misfortune for his personal financial gain. People who apply for DPW benefits go into the County office with major financial, medical or social problems. Many applicants are in a distressed state of mind and embarrassed by the need to apply and go through an interview process. Metrick seized upon that vulnerability of the DPW applicants as a means to sell them insurance policies or recruit them as agents for Primerica for his personal financial gain at the expense and in total disregard of his duty as a DPW employee which was to help those applicants in their time of need.

*Metrick* at 40; Appendix D to the Commission's Brief.

Because the Commission correctly interpreted the relevant provisions of the Ethics Act and the regulations in determining that the caseworkers are public employees subject to the Ethics Act, the Commission's opinion is affirmed.

## *ORDER*

AND NOW, this 5th day of January, 2010, the opinion issued by the State Ethics Commission in the above-captioned matter is hereby AFFIRMED.